IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT L. COLLINS BEY,

                Plaintiff,

v.

SARAH GILLES,[1]

                Defendant.

OPINION and ORDER

17-cv-293-jdp

---

Pro se plaintiff Robert L. Collins Bey, a prisoner at Wisconsin Secure Program Facility, brings claims that the WSPF librarian, defendant Sarah Gilles, would not allow him to receive magazines while he was in administrative confinement status. Gilles has filed a motion for summary judgment. In lieu of summary judgment opposition materials, Collins Bey filed a motion for the court's assistance in recruiting counsel. Dkt. 16. In a September 28, 2018 order, I denied Collins Bey's motion and gave him a final chance to submit materials in opposition to Gilles's motion for summary judgment. *See* Dkt. 27.

But Collins Bey did not submit opposition materials by the new deadline. Because Collins Bey has not responded to Gilles's factual assertions made in support of her motion for summary judgment, I will accept those facts as undisputed. Fed. R. Civ. P. 56(e)(2). After considering the undisputed facts, I will grant summary judgment to Gilles on all of Collins Bey's claims.

---

[1] Defendant was recently married and now goes by the name Sarah Winger, but I will continue to refer to defendant by the name she used at the time of the events in this case.

## UNDISPUTED FACTS

Plaintiff Robert Collins Bey is an inmate at Wisconsin Secure Program Facility, located in Boscobel, Wisconsin. Defendant Sarah Gilles is the WSPF librarian.

During the time relevant to this lawsuit—December 14, 2016, to March 17, 2017—Collins Bey was housed in either administrative confinement or disciplinary segregation, two different housing statuses in the Restrictive Housing units at WSPF. Administrative confinement is a non-punitive segregated status where inmates can be placed if their presence in general population poses a risk to themselves, staff, or other inmates, or because their presence in general population compromises the security and orderly operation of the institution. Inmates may be placed in disciplinary separation as a penalty if they have been found guilty of a major offense.

At the times relevant to this lawsuit, WSPF had two units containing restrictive housing inmates, Alpha and Foxtrot. Alpha Unit housed a large number of disciplinary-separation inmates, while Foxtrot Unit housed very few disciplinary-separation inmates. Collins Bey was transferred from disciplinary separation to administrative confinement on December 14, 2016, in the Alpha Unit.

Inmates in disciplinary separation have greater restrictions on their property than inmates in administrative confinement. Disciplinary-separation inmates have historically been prevented from having library magazines because staff would remove staples for safety purposes. It was then easy for those inmates to use the magazine pages in disruptive ways, such as fashioning real or fake weapons, or covering their cell windows. Once a magazine is damaged it is removed from circulation, so keeping magazines from disciplinary-separation inmates kept more magazines intact for other inmates.

Administrative-confinement inmates are allowed to have a broader range of property, but because inmates in both statuses often find ways to share property, and Alpha Unit housed inmates in both statuses, the administrative-confinement inmates in Alpha Unit were also prohibited from borrowing library magazines. For a time, Foxtrot Unit administrative-confinement inmates were allowed to borrow library magazines because there were so few disciplinary-separation inmates in the unit along with them.

Up until December 16, 2016, inmates on Alpha Unit were allowed 3 library books and 5 "personal publications"—softcover books, magazines with no staples, newspapers, or pamphlets—while inmates on Foxtrot Unit could have 4 library books, 1 library newspaper or magazine, and 25 personal publications.

There was unrest among inmates because of the differences in property allowances. Also, inmates of both status types were damaging the magazines they received from the library. So on December 16, 2016, a new policy went into effect, allowing administrative-confinement inmates in both units up to 4 library books, 1 unit newspaper, and 25 personal publications, while inmates in the most restrictive disciplinary-separation "steps" were allowed 3 library books and 5 personal publications. None of the inmates in either status were allowed library magazines, although they could get magazines from outside sources. Administrative-confinement inmates were also allowed to have a personal television or radio.

From mid-December 2016 to mid-March 2017, Collins Bey borrowed seven books from the library. Starting in mid-March 2017, after Collins Bey filed an inmate grievance, Gilles mistakenly allowed Collins Bey to borrow magazines from the library.

ANALYSIS

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

I allowed Collins Bey to proceed on claims under three different theories concerning the deprivation of magazines: First Amendment, Eighth Amendment, and "class of one" equal protection theories.

Inmates' rights to receive certain reading materials are limited by *Turner v. Safley*, which allows prisons to restrict a prisoner's First Amendment right to free speech if such a restriction is "reasonably related to legitimate penological interests." 482 U.S. 78, at 87.[2] In determining whether a restriction is reasonably related to legitimate penological interests, the Supreme Court has set out four factors to be used in determining the reasonableness of prison regulations: (1) the existence of "valid, rational connection" between the regulation and a legitimate, neutral government interest; (2) the existence of alternative methods for the inmate

---

[2] Gilles argues that the First Amendment does not cover the right to borrow library magazines, but she does not develop this argument, so I will not consider it.

to exercise his constitutional right; (3) the effect the inmate's assertion of that right will have on the operation of the prison; and (4) the absence of an obvious, easy alternative method to satisfy the government's legitimate interest. *Id.* at 89–91. In considering these factors, I "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Given the deference I must accord prison officials, the prison policy here passes muster under *Turner*. The restriction was limited in scope, which tends to show that prison officials were not attempting to shut down access to certain types of information. Gilles argues that it was reasonable to withhold library magazines from disciplinary-separation inmates because they tended to destroy them and use the paper for improper purposes. She later found that even the administrative-confinement inmates destroyed the magazines, which made fewer items available for the rest of the prison. She also convincingly argues that the restriction on library magazines was reasonable because it was not feasible to treat administrative-confinement and disciplinary-separation inmates differently, or treat Alpha Unit or Foxtrot units differently: there were inmates of both statuses in both units, and inmates were able to circumvent controls on sharing library magazines if they were allowed in at all. She also argues that prison officials may also use property restrictions to motivate better behavior from the disciplinary-separation inmates. *See Beard v. Banks*, 548 U.S. 521, 531–32 (2006) (inmates in "Long Term Segregation Unit" denied access to newspapers, magazines, and personal photographs). And the inmates had other ways to obtain reading materials, which Collins Bey did. So I will grant Gilles summary judgment on this claim.

I can decide Collins Bey's Eighth Amendment and "class of one" equal protection theories in more perfunctory fashion. Collins Bey alleged that he needed reading materials to avoid becoming mentally unstable while incarcerated in solitary confinement, but Gilles's summary judgment materials shows that Collins Bey indeed had access to reading materials, just not one type of library material. And he cannot maintain a "class of one claim" because he was not singled out for worse treatment than others. He was treated the same as other inmates in administrative confinement or disciplinary separation until March 2017, when he apparently was able to receive *more* materials than the regulations allowed. I will grant summary judgment to Gilles on these claims and dismiss the case.

ORDER

IT IS ORDERED that:

1. Defendant Sarah Gilles's motion for summary judgment, Dkt. 19, is GRANTED.
2. The clerk of court is directed to enter judgment for defendant and close this case.

Entered November 6, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge